# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| SHAMICA CARTER ) | |
| o/b/o T.M., a Minor, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CV616-012 |
| CAROLYN COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of the Social Security Administration's denial of an application for Supplemental Security Income (SSI) filed on behalf of T.M., a minor. Tr. 179-88.

## I. GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v.*

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted). *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

A three-step sequential process is used to determine whether a child is disabled. 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the claimant is engaging in substantial gainful activity; if so, the claim is denied. *Id.* § 416.924(b). At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if the claimant does not have any severe impairments, the claim is denied. *Id.* § 416.924(c). At the third and final step, the Commissioner must determine whether the child's impairments meet or equal a "listed" impairment. *Id.* § 416.924(d). If the claimant does not have an impairment that meets, medically equals, or functionally equals the Listings, he will be found not disabled. *Id.* § 416.924(d)(2). The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## II. ANALYSIS

T.M., who alleges disability since January 29, 2012, was 8 years old when his SSI claim was denied. Tr. 15; 179-88 (protective filing for SSI benefits). He was a preschooler at the time of application and

school-aged at the time of the ALJ's decision. Tr. 15. After a hearing, the ALJ issued an unfavorable decision. Tr. 34-62, 12-28. The ALJ found that T.M.'s attention deficit hyperactivity disorder (ADHD) and mood disorder constituted severe impairments but did not meet or equal a Listing. Tr. 15-28. Hence, the ALJ found, he is not disabled. Tr. 28.

### A. Lay Witness Testimony

The ALJ accorded "little weight" to licensed social worker (LCSW) Mary Sayre, Nurse Michele D. Hughes, and kindergarten teacher Mary Elam. Tr. 17-27. Plaintiff contends that the ALJ erred by failing to accord proper weight to these sources. Doc. 13.

All that is required of an ALJ regarding non-medical source evidence is that the evidence be considered. *See* 20 C.F.R. §§ 416.926, 416.926a, 416.927, 416.929.[1] There is no requirement that an ALJ give any

---

[1] Though plaintiff devotes quite a bit of time to discussing the weight normally accorded to treating physicians under the regulations, neither social workers nor nurses are considered acceptable medical sources by the Social Security Administration. *See* 20 C.F.R. § 416.913(a) ("acceptable medical sources" include physicians, psychologists, and other medical professionals"). ALJs "may also use evidence from other sources," including nurses, teachers, and social workers to show the severity (but not the existence) of an impairment and how a child typically functions. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1283-84 (11th Cir. 2004) (such evidence is relevant to both specifically determining severity of impairments and generally in reaching conclusions about how the child functions day to day). Yet these are *not* considered in the same league as "acceptable medical sources." SSR 06-03p; 20 C.F.R. §§ 404.1513(d) & 416.913(d). Because they are not acceptable medical sources, nurses and LCSWs are weighed the same as any other lay

3

particular amount of weight to non-medical source evidence. *See id.* In rejecting lay witness testimony, the ALJ need only provide "arguably germane reasons" for dismissing the testimony, even if she does "not clearly link [her] determination to those reasons." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (cited in *Cole v. Comm'r of Soc. Sec.*, 2012 WL 4077233 at *4 (M.D. Fla. Sept. 17, 2012)). An ALJ may reject lay witness testimony if it is inconsistent with the record. *See, e.g., Lewis*, 236 F.3d at 511-12 (rejecting lay witness testimony conflicting with the plaintiff's testimony and the medical record); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (rejecting lay witness testimony conflicting with the medical record).

The ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Further, "[i]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir.

---

witness. *Colon v. Colvin*, 2013 WL 4890312 at *2 (M.D. Fla. Sept. 11, 2013) (quoting *Blodgett v. Comm'r of Social Sec.*, 534 F. App'x 608, 610-11 (9th Cir. 2013) (counselors and nurses are "other sources" within the meaning of the regulations) and *Rusten v. Comm'r of Soc. Sec.*, 468 F. App'x 717, 720 (9th Cir. 2012) ("An ALJ can give less weight to an 'other source' medical opinion by providing reasons germane to each witness for doing so.")).

4

2012); 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), *see also* SSR[2] 06-03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision"); *Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006) ("[W]e conclude that the ALJ's specific and explicit credibility determination as to Osborn's testimony sufficiently implies a rejection of Mrs. Osborn's testimony as well.").

1. **LCSW Sayre**

The ALJ rejected LCSW Sayre's 2014 opinion that T.M. had "marked limitations" in every area of functioning (*see* tr. 381-82) because she was not an acceptable medical source, she provided no commentary explaining or supporting her assessment, and her assessment was inconsistent with both her own treating notes and with plaintiff's testimony. Tr. 19-20; *see* tr. 45 (plaintiff testified that T.M. was in regular classes with no special assistance, had never been held back a

---

[2] Social Security Rulings (SSR) "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are entitled to deference, but are not binding on the courts. *Fair v. Shalala*, 37 F.3d 1466, 1467 (11th Cir. 1994); *cf. Silveira v. Apfel*, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").

5

grade, and was "doing okay as far as his grades"), tr. 50-52 (plaintiff also testified that T.M. mostly got along well with other children and with adults and had no problems caring for his personal needs); *see also Lewis*, 236 F.3d at 511-12. The ALJ also properly relied upon agency reviewing psychologist Dr. James Mullins' opinion -- who plaintiff notably does *not* dispute was properly accorded significant weight by the ALJ -- that T.M. had less than marked limitations in all functional areas. Tr. 87-88; *Bayliss*, 427 F.3d at 1218. The ALJ provided appropriate, specific, and germane reasons sufficient to discount LCSW Sayre's opinion. *Lewis*, 236 F.3d at 511-12.

### 2. Nurse Hughes

The ALJ considered Nurse Hughes' note describing aggression and sexually inappropriate behavior toward peers and other disruptive classroom behavior. Tr. 383. He rejected it because she was not an acceptable medical source and had only superficial knowledge of T.M.'s medical condition. Tr. 20; *see* tr. 39 & 59-60 (plaintiff testified that Nurse Hughes checks vital signs and asks cursory questions -- nothing that the counselor or physician would ask). Again, the ALJ properly relied upon credited psychologist Dr. Mullins' conclusions that T.M. had

6

less than marked limitations in all functional areas. Tr. 87-88; *see Bayliss*, 427 F.3d at 1218. The ALJ provided appropriate, specific, and germane reasons sufficient to discount Nurse Hughes' opinion. *Lewis*, 236 F.3d at 511-12.

### 3. Kindergarten Teacher Ms. Elam

The ALJ also properly evaluated the testimony of T.M.'s kindergarten teacher Ms. Elam in determining plaintiff's actual functional limitations.[3] *See* 20 C.F.R. §§ 416.924a(a)(2)(iii), (b)(3), (7) (the agency "will" consider school records, including standardized tests and statements from teachers, in determining the severity of a child's "functional limitations").

Regarding the first domain of "acquiring and using information," the ALJ noted that Ms. Elam had identified "obvious" problems in several areas and a "serious" problem with written expression and applying problem-solving skills in class discussions. Tr. 21-22; *see* tr. 220. He noted, however, that her opinion of significant limitations was inconsistent with plaintiff's testimony that T.M.'s grades were "okay" and

---

[3] Pursuant to 20 C.F.R. § 416.926a, the ALJ assessed T.M.'s functional ability in six domains: acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. Tr. 20-28.

7

that he attended regular classes with no special assistance (tr. 45, 217), along with school records noting only "moderate problems with [T.M.'s] schoolwork performance" (tr. 264). Tr. 21.

In the second domain of "attending and completing tasks," the ALJ noted that Ms. Elam reported "very serious problems carrying out multi-step instructions, waiting to take turns and working without distracting himself and others." Tr. 23; *see* tr. 203. She further reported that T.M. became easily frustrated and blamed others when things went wrong. *Id.* Her opinion, however, contradicted T.M.'s ability to "fully interact and participate in most of his counseling sessions" and be "redirected back onto task" when distracted or struggling to focus (tr. 261, 265, 275-76, 299-300, 303, 328-33, 349, 355-78, 393). Tr. 23. He also noted the inconsistency with plaintiff's testimony that, while T.M.'s attention is limited, he is able to keep busy on his own and completes his homework (tr. 203). Tr. 23.

Regarding the third functional domain of "interacting and relating with others," the ALJ noted that Ms. Elam reported "very serious problems in nearly every activity in this functional domain" (tr. 222). Tr. 24. He found her opinion inconsistent, however, with plaintiff's

8

report that T.M. got on with adults and children unless "he gets mad" (tr. 50-51), and cooperated with his counselor and treatment providers during a majority of his visits. Tr. 25.

Finally, in the fifth domain of "caring for [him]self," the ALJ considered Ms. Elam's opinion that T.M. had serious problems handling frustration, being patient, responding to changes in mood, and coping skills (tr. 224). Tr. 27. He found this report inconsistent, however, with plaintiff's testimony regarding T.M.'s self-care skills (tr. 51) and demonstrated periods of good behavior with counseling and medication. Tr. 27.[4]

Here again, the ALJ relied upon Dr. Mullins' opinion that T.M. had less than marked limitations in each of these functional domains. Tr. 20-28; *see* tr. 87-92; *see also Bayliss*, 427 F.3d at 1218. The ALJ thus provided appropriate, specific, and germane reasons sufficient to discount Ms. Elam's opinion. *Lewis*, 236 F.3d at 511-12.

In sum, the ALJ did not err in his evaluation of the lay testimony.

---

[4]  In the fourth and sixth domains of "moving about and manipulating objects" and "health and well-being," Ms. Elam did not point to any deficits. Tr. 25 & 27; *see* tr. 223 & 225.

9

## III. CONCLUSION

Because the ALJ's determination was supported by substantial evidence, the Commissioner's final decision should be **AFFIRMED**.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this  3rd  day of January, 2017.

_/s/ G. R. Smith_
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA